IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JILL SWENSON, MELODY MCCURTIS, MARIA NELSON, BLACK LEADERS ORGANIZING FOR COMMUNITIES, and DISABILITY RIGHTS WISCONSIN,<br>*Plaintiffs*,<br><br>v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners,<br>*Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE and REPUBLICAN PARTY OF WISCONSIN,<br>[*Proposed*] *Intervenor-Defendants*. | Case No. 3:20-cv-459-wmc |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY THE REPUBLICAN NATIONAL COMMITTEE AND REPUBLICAN PARTY OF WISCONSIN**

Movants, the Republican National Committee and Republican Party of Wisconsin, respectfully ask this Court to grant their motion to intervene in this case. Defendants consent to intervention, but Plaintiffs oppose. The Court should allow Movants to intervene as defendants for two independent reasons.

**First**, this Court should grant Movants permissive intervention under Rule 24(b). Movants' defenses of the challenged laws share common questions of law and fact with the exiting action, and intervention will result in no delay or prejudice. Permissive intervention is thus appropriate here for the same reasons that the Court granted it in three related cases.

**Second**, and alternatively, Movants satisfy the criteria for intervention as of right under Rule 24(a)(2). The complaint was filed less than a month ago, this litigation is still in its infancy, and no party will be prejudiced by intervention at this early stage. Movants also have a recognized interest in

1

asserting and protecting the rights of their members in upcoming elections and in protecting their own agendas and resources from changes to election laws. Finally, no other party adequately represents Movants' interests. The governmental defendants consent to intervention, are represented by private counsel, and have stated that they will not defend the challenged laws on the merits.

Whether under Rule 24(a) or (b), this Court should allow Movants to intervene as defendants.

## INTERESTS OF PROPOSED INTERVENORS

Movants are political committees that represent and support Republicans in Wisconsin. The Republican National Committee is a national committee as defined by 52 U.S.C. §30101. It manages the party's business at the national level, supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The Republican Party of Wisconsin is a recognized political party that works to promote Republican values and assist Republican candidates in partisan elections to federal, state, and local office. Both Movants have interests—their own and those of their members—in how Wisconsin elections are run.

## ARGUMENT

**I.        Movants are entitled to permissive intervention.**

Rule 24 is "liberally construed with all doubts resolved in favor of the proposed intervenor." *South Dakota ex rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003); *accord Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011); *Clark v. Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953). Exercising broad judicial discretion, courts grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The court also considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

These considerations all favor Movants, as this Court recently held in three cases that have been tagged as related to this one. *See Democratic Nat'l Comm. v. Bostelmann* (*DNC*), No. 20-cv-249-wmc,

2

2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020); Doc. 122 (Text Only Order), *DNC*, No. 20-cv-249-wmc. Movants' motion is timely, *see infra* II.A, and "there is no reasonable dispute that their proposed defense of the challenged laws shares common questions of law and fact with the main action." *DNC*, 2020 WL 1505640, at *5; *accord Pac for Middle Am. v. State Bd. of Elections*, 1995 WL 571893, *4 (N.D. Ill. Sept. 22, 1995); *Builders Ass'n of Greater Chi. v. Chicago*, 170 F.R.D. 435, 441 (N.D. Ill. 1996).

Nor will Movants' intervention unduly delay this litigation or prejudice anyone. Movants swiftly moved to intervene while the case was "at … a nascent stage," *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 286 (D.D.C. 2014), and their participation will add no delay beyond the norm for multiparty litigation. Plaintiffs "put [the constitutionality of the laws] at issue," moreover, and they "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *ABS Global, Inc. v. Inguran, LLC*, 2015 WL 1486647, *5 (W.D. Wis. Mar. 31, 2015); *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commit to following the same briefing schedule as Defendants, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., L.P. v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016).

As this Court explained in the three related cases, Movants are "uniquely qualified" for permissive intervention because their "'interest in the litigation is the mirror-image'" of Plaintiffs'. *DNC*, 2020 WL 1505640, at *5 (quoting *Builders Ass'n*, 170 F.R.D. at 441). While the Court made that statement in a case involving the Democratic Party, the observation holds here, since Plaintiffs seek much of the same relief that the Democratic Party seeks there. *Compare* Compl. 66-68, *with* Doc. 155-1 at 75-78 & Doc. 140-1 at 38-39, *DNC*, No. 20-cv-249-wmc. Indeed, in two of the related cases—*Gear v. Bostelmann*, No. 20-cv-278-wmc (W.D. Wis.), and *Lewis v. Bostelmann*, No. 20-cv-284 (W.D. Wis.)—this Court allowed Movants to intervene even though the Democratic Party was *not* a plaintiff. *See* Doc. 122, *DNC*, No. 20-cv-249-wmc. While those cases were consolidated with the *DNC* case,

3

this Court necessarily determined that Movants satisfied the requirements for permissive intervention in each case. *See Hall v. Hall*, 138 S. Ct. 1118, 1127-28 (2018) (explaining that "'consolidation does not merge the suits'" and that intervenors in one don't automatically become intervenors in the others). The Court was correct, and its reasoning applies to this related case as well.

Allowing Movants to permissively intervene in this case has other benefits. It would allow the Court to evaluate all the competing claims and arguments at the same time, thus preventing protracted piecemeal litigation and the possibility of conflicting legal decisions. *ABS Global*, 2015 WL 1486647, *5. Allowing intervention by political parties in a "time-sensitiv[e]" "election-related dispute" also preempts the delay that otherwise results from sorting out Movants' rights on appeal. *See Jacobson v. Detzner*, 2018 WL 10509488 (N.D. Fla.) ("[D]enying [Republican Party organizations'] motion [to intervene] opens the door to delaying the adjudication of this case's merits for months—if not longer"); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a putative intervenor from becoming a party in *any* respect, the order is subject to immediate review.").

Where a court has doubts, "the most prudent and efficient course of action" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002). The Court should do so here.

**II.     Alternatively, Movants are entitled to intervene as of right.**

Although permissive intervention is an easier call (and was the basis of this Court's prior order granting intervention to Movants), this Court could also grant Movants intervention as of right. Under Rule 24(a)(2), this Court must grant intervention as of right if:

1. The motion is timely;
2. Movants have a legally protected interest in this action;
3. This action may impair or impede that interest; and
4. No existing party adequately represents Movants' interests.

*Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003). Movants satisfy each of these requirements.

### A. The motion is timely.

Movants filed this motion in a "timely" fashion. Fed. R. Civ. P. 24(a). The complaint was filed less than a month ago. *See, e.g.*, *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (motions filed 4-6 weeks after the complaint are timely); *Richardson v. Helgerson*, 2015 WL 3397623, *1 (W.D. Wis. May 26, 2015) (motion filed one month after the complaint was timely); *Luce v. Town of Campbell*, 2014 WL 6632341, at *1 (W.D. Wis. Nov. 21, 2014) (similar). Indeed, Movants filed this motion before Defendants even filed an answer. *See, e.g.*, *Buck v. Gordon*, 2020 WL 2316677, at *4 n.4 (6th Cir. May 11, 2020) ("there is no dispute" that a motion filed before any defendant filed an answer is timely). Nor will Movants' intervention "prejudice" the parties. *United States v. Kemper Money Mkt. Fund, Inc.*, 704 F.2d 389, 391 (7th Cir. 1983). No motions have been filed, and no merits briefing has occurred. But if Movants are not allowed to intervene, their interests would be irreparably harmed by decisions (including any preliminary injunction) that will affect the upcoming elections in Wisconsin. Their motion is thus timely.

### B. Movants have protected interests in this action.

Movants also have a "legally protectable interest in this litigation." *Lopez-Aguilar*, 924 F.3d at 391. The Seventh Circuit has embraced the Supreme Court's approach of "'encouraging liberality in the definition of an interest.'" *Id.* at 392. Movants easily satisfy this liberal standard.

Movants' interests in this action are, at a minimum, equal to Plaintiffs'. Like Plaintiffs, Movants want to increase "civic engagement" and encourage their members "to fulfill their potential for electoral impact." Compl. 7. And like Plaintiffs, Movants will be "forced to divert significant resources" to address "online registration and absentee ballot request issues, walk[] voters through changing deadlines, and provid[e] them with information" about voting procedures. Compl. 7. If Plaintiffs have standing to "bring[] this suit on behalf of [their constituents] who face significant

5

obstacles to voting," Compl. 7, then Movants have an interest in protecting their members from similar obstacles that result from eleventh-hour changes to voting rules. *See Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007). And if Plaintiffs have an interest in protecting the integrity of elections to which they have "divert[ed] significant resources," Compl. 7-8, then Movants do too—especially where, as here, Plaintiffs aim to freeze the very laws that were enacted to maintain that integrity. *See One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 909 (W.D. Wis. 2016).

But even considered in isolation, Movants have "direct" and "significant" interests in the continued enforcement of state laws governing voter registration, absentee ballots, and voter identification, as those laws are designed to serve "the integrity of [the] election process," *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). Federal courts routinely recognize that political parties have interests supporting intervention in litigation regarding elections and election procedures. *See, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2000); *Trinsey v. Pennsylvania*, 941 F.2d 224, 226 (3d Cir. 1991); *Anderson v. Babb*, 632 F.2d 300, 304 (4th Cir. 1980); *Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 639 (N.D. Ill. 1991); *Radogno v. Ill. State Bd. of Elections*, 2011 WL 5868225, *1 (N.D. Ill. Nov. 22, 2011).

Indeed, given their inherent and broad-based interest in elections, usually "[n]o one disputes" that a political party "meet[s] the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). That is certainly true where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005); *see id.* (under such circumstances, "there is no dispute that the Ohio Republican Party had an interest in the subject matter of this case"). Because Movants' candidates "actively seek [election or] reelection in contests governed by the challenged rules," and because their members'

ability to participate in those elections is governed by the challenged rules, Movants have an interest in "demand[ing] adherence" to those requirements. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005).

        **C.**        **This action threatens to impair Movants' interests.**

Movants are "so situated that disposing of [this] action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be impaired," "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). This language in Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967). Here, the risks to Movants' interests are plain.

If Plaintiffs' action succeeds, then the rules surrounding voter registration, absentee voting, and voter identification will be upended shortly before the August and November elections. Not only would this undercut democratically enacted laws that protect voters and candidates (including Movants' members), *Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014), it would change the "structur[e] of th[e] competitive environment" and "fundamentally alter the environment in which [Movants] defend their concrete interests (e.g. their interest in … winning [election or] reelection)," *Shays*, 414 F.3d at 85-86. These late changes threaten to confuse voters and undermine confidence in the electoral process. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). In addition to that independent harm, Movants will be forced to spend substantial resources informing Republican voters of changes in the law, fighting inevitable confusion, and galvanizing participation in the wake of the "consequent incentive to remain away from the polls." *Id.*; *Crawford*, 472 F.3d at 951; *Thomsen*, 198 F. Supp. 3d at 909.

Movants need to intervene now to stop these potential impairments. Because the "very purpose of intervention is to allow interested parties to air their views so that a court may consider

them *before* making potentially adverse decisions," *Brumfield*, 749 F.3d at 345 (emphasis added), the "best" course—and the one that Rule 24 "implements"—is to give "all parties with a real stake in a controversy … an opportunity to be heard," *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

### D. The existing parties do not adequately represent Movants' interests.

Finally, the existing parties are not "adequate representatives of [Movants'] interest." *Lopez-Aguilar*, 924 F.3d at 391. Typically, a movant must show only that "the representation 'may be' inadequate"—a "'minimal'" burden. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). The burden increases, however, when the "intervenor and the named party have 'the same goal,'" and the burden increases further when "the [named] party 'is a governmental body charged by law with protecting the interests of the proposed intervenors.'" *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019). Then, "the [government] party is presumed to be an adequate representative 'unless there is a showing of gross negligence or bad faith.'" *Id.* But that presumption does not apply—or has been rebutted—here.

As this Court knows, Defendants have already declined to defend these laws once before. In the *DNC* case, Defendants were initially represented by the Attorney General and promised to defend many of the same laws challenged here—Wisconsin's photo-identification requirement for absentee-ballot applications, Wis. Stat. §6.86, the witness requirement for absentee ballots, Wis. Stat. §6.87(2), and the postmark-by-election-day requirement for absentee ballots, Wis. Stat. §6.87(6). *See* Compl. 68; Doc. 51, *DNC*, No. 20-cv-249-wmc. But the Attorney General soon withdrew from the *DNC* case, Defendants hired private counsel (the same attorneys who represent them here), and Defendants declined to defend the challenged laws on the merits. *See* Doc. 107, *DNC*, No. 20-cv-249-wmc. When this Court preliminarily enjoined some of those laws, Defendants did not appeal. This sequence of

8

events is not surprising, as the Wisconsin Elections Commission is evenly divided between Republicans and Democrats, and that deadlock often prevents it from taking positions. *See* Shawn Johnson, *State Election Panel Deadlocks Again on How to Address Ruling on Voter List Purge*, WPR (Dec. 30, 2019), bit.ly/2XteJsj.

The Seventh Circuit granted intervention as of right on these facts. On appeal in *DNC*, the Wisconsin Legislature argued that it was entitled to intervention as of right, stressing that Defendants were "*expressly refusing to defend several of the challenged laws*." Doc. 4-1 at 25, *Democratic Nat'l Comm. v. Bostelmann* (*DNC*), No. 20-1539 (7th Cir.). (The Legislature did not raise permissive intervention on appeal.) The Seventh Circuit agreed. *See* Doc. 30 at 4, *DNC*, No. 20-1539.

The Seventh Circuit's ruling is "law of the case" in *DNC*, Doc. 191 (Text Only Order), No. 20-cv-249, and its reasoning should govern this related case. As in *DNC*, Defendants are represented by the same private counsel and remain unwilling to defend all of the challenged laws. Defendants made this abundantly clear in *Edwards v. Bostelmann*, No. 20-cv-340-wmc (W.D. Wis.)—another case that has been tagged as related to this one and *DNC*. In *Edwards*, Defendants (represented by the same private counsel) recently filed a memorandum of law in support of a motion to dismiss on procedural grounds. The memorandum strongly insists that Defendants "have no authority … to take a substantive position as to whether laws governing the conduct of elections ought to be changed" and are "unable to challenge or litigate the outcome of the injunctive relief sought in this case." Doc. 15 at 5-6, *Edwards*, No. 20-cv-340-wmc. Defendants also disclaim the "authority to appeal any judicially mandated changes in elections procedures." *Id.* at 6. "Due to [these] statutory constraints on their authority," Defendants explained, they could "take no position in this case as to whether the plaintiffs[] are entitled to some form of prospective relief." *Id.* at 7.

Defendants' memorandum in *Edwards* explains why they did not defend the challenged laws in *DNC*, are not defending the challenged laws in *Edwards*, and will not defend the challenged laws

9

here. All of this is strong evidence of "a concrete, substantive conflict or an actual divergence of interests [sufficient] to overcome [the presumption of adequate representation]." *Kaul*, 942 F.3d at 810 (Sykes, J., concurring). Defendants' memorandum in *Edwards* also explains why they have consented to Movants' intervention both here and in *Edwards*. The fact that Defendants—the only parties who could possibly represent Movants' interests—agree that Movants satisfy the requirements for intervention as of right is decisive. *See Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001); *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002); *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017).

In short, "intervention [is] vital to the defense of the law[s] at issue" in this case. *Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 2019) (citing *Horne v. Flores*, 557 U.S. 433, 433 (2009)). Movants should thus be granted intervention as of right.

## CONCLUSION

The Court should grant Movants' motion and allow them to intervene as defendants.

Dated: June 8, 2020

Respectfully submitted,

 */s/ Patrick Strawbridge*
Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Jeffrey M. Harris
Cameron T. Norris
Alexa R. Baltes
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209

*Counsel for Proposed Intervenor-Defendants Republican National Committee and Republican Party of Wisconsin*