IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN,<br>*Plaintiffs*,<br><br>v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners,<br>*Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, REPUBLICAN PARTY OF WISCONSIN, and WISCONSIN STATE LEGISLATURE<br>*Intervenor-Defendants*. | Case No: 3:20-cv-249-wmc (consolidated with 3:20-cv-278-wmc, 3:20-cv-284-wmc, 3:20-cv-340-wmc, and 3:20-cv-459-wmc) |

**INTERVENOR-DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Intervenors, the Republican National Committee (RNC) and the Republican Party of Wisconsin (RPW), incorporate by reference the arguments of the Wisconsin Legislature opposing any preliminary injunction in this case, *see* Doc. 454, which comprehensively refute the legal and factual basis offered by Plaintiffs. In an effort to avoid duplicative briefing, the RNC and RPW write briefly to emphasize three points that should guide the Court's consideration of whether Plaintiffs can make "a clear showing" that they are entitled to the "extraordinary remedy" of an injunction. *Winter v. NRDC*, 555 U.S. 7, 24, 22 (2008).

**First**, "[constitutional] violations require state action," and Wisconsin is not responsible for COVID-19 or private citizens' responses to it. *Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020). While COVID-19 has changed Wisconsinites' everyday lives, these difficulties are not burdens imposed "by the State." *Tex. Democratic Party v. Abbott*, 2020 WL 2982937 (5th Cir. June 4, 2020). Plaintiffs' claimed obstacles to voting "are not caused by or fairly traceable to the actions of the State,

1

but rather are caused by the global pandemic." *Mays v. Thurston*, 2020 WL 1531359, at *2 (E.D. Ark. Mar. 30, 2020). To date, most courts have recognized that "COVID-19 … is not the result of any act or failure to act by the Government. And that fact is important" because "[a]ll of the election cases cited by Plaintiffs in which injunctive relief was granted involved a burden … that was created by the Government. Not so here." *Coalition for Good Governance v. Raffensperger*, 2020 WL 2509092, at *3 n.2 (N.D. Ga. May 14, 2020); *accord Tex. Democratic Party*, 2020 WL 2982937, at *11 ("The Constitution is not offended … even where voting in person may be extremely difficult … because of circumstances beyond the state's control, such as the presence of the Virus." (cleaned up)).

      Moreover, the State has determined that it can conduct in-person voting safely and effectively. Wisconsin has generally relaxed its restrictions on the public since the April election, and both the WEC and municipalities are moving forward with plans to offer in-person voting in a safe manner this fall. Even if this Court disagreed that voting could be safely administered under these circumstances—and it bears repeating that Plaintiffs cannot even demonstrate that a single voter was infected during April's in-person election—federal courts cannot and should not second-guess the judgment of Wisconsin's election officials. As the Seventh Circuit explained earlier in this case, questions about how to "accommodate voters' interests while also striving to ensure their safety" are best left to election officials, who are "better positioned … to accommodate the many intersecting interests in play in the present circumstances." *Democratic Nat'l Comm. v. Bostelmann*, Doc. 30, No. 20-1538 (7th Cir. Apr. 3, 2020). "[F]ederal courts make poor arbiters of public health." *Sinner v. Jaeger*, 2020 WL 3244143, at *6 (D.N.D. June 15, 2020). They do "not have the authority 'to act as the state's chief health official' by making the decision" how best to protect "the health and safety of the community." *Taylor v. Milwaukee Election Comm'n*, 2020 WL 1695454, at *9 (E.D. Wis. Apr. 6, 2020). These "decisions are instead best left 'to the politically accountable officials of the States,' not 'an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public

health and is not accountable to the people.'" *Sinner*, 2020 WL 3244143, at *6 (quoting *S. Bay United Pentecostal Church v. Newsom*, 2020 WL 2813056, at *1 (U.S. May 29, 2020) (Roberts, C.J., concurring in the denial of injunctive relief)).

**Second**, even if the Plaintiffs could attribute the effects of the pandemic to some constitutional violation by state actors, their attempt to slice and dice various provisions of Wisconsin election law and attack them in isolation is foreclosed by binding precedent. On their face, none of the challenged laws abridges the right to vote. As the Seventh Circuit has explained, "[v]oting fraud is a serious problem" that can be "facilitated by absentee voting." *Griffin v. Roupas*, 385 F.3d 1128, 1130-31 (7th Cir. 2004). Registration deadlines promote the State's "valid and sufficient interests in … prepar[ing] adequate voter records and protect[ing] its electoral processes from possible frauds." *Marston v. Lewis*, 410 U.S. 679, 680 (1973) (upholding a registration deadline 50 days before the election). These deadlines also "provide[] a certainty and reliability that enable election officials to direct their efforts to the essential tasks of election preparation and thus minimize[] the degree of disorder and the risk of error and even chaos." *Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1335 (S.D. Fla. 2008). Similarly, laws that require voters to prove their identity "deter[] fraud," "promote[] accurate record keeping," and "promote[] voter confidence." *Frank v. Walker* (*Frank I*), 768 F.3d 744, 750 (7th Cir. 2014).

Because all of the challenged provisions are "nondiscriminatory law[s]" that are "supported by valid neutral justifications," *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 204 (2008) (opinion of Stevens, J.), Plaintiffs have no chance of success on the merits of their claims. In these types of *Anderson-Burdick* cases, the "government's legitimate regulatory interests will generally carry the day." *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 681 (7th Cir. 2014). Moreover, in analyzing the Plaintiffs' challenges the Court cannot "look at each provision in isolation[.]" *Luft v. Evers*, ---- F.3d ---, 2020 WL 3496860, at *3 (7th Cir. 2020). It must instead consider "Wisconsin's many other provisions that make

3

it easy to vote," *id.* \*6, in reaching a decision as to whether the asserted burdens of the challenged laws outweigh the state's interests.

Moreover, in doing so the Court cannot focus only on the inconvenience or disruption to certain *individual* voters. "This is not a plausible application of *Anderson* and *Burdick*." *Luft*, 2020 WL 3496860, at \*7. "Some [voters'] potential inconvenience does not permit a court to override the state's judgment that other interests predominate." *Id.* Indeed, a "voter-by-voter examination of the burdens of voting regulations" is "especially disruptive." *Crawford*, 553 U.S. at 208 (Scalia, J,., concurring). States like Wisconsin must make legislative determinations for their population as a whole, and could not possibly anticipate every potential effect on each and every voter. As the Northern District of Florida recently explained, "[a] state could reasonably … decide," for example, "to require receipt on or before election day. This eliminates the problem of missing, unclear, or even altered postmarks, eliminates delay that can have adverse consequences, and eliminates the remote possibility that in an extremely close election … a person who did not vote on or before election day can fill out and submit a ballot later." *Nielsen v. DeSantis*, Doc. 332 at 3, No. 4:20-cv-236-RH-MJF (N.D. Fla. June 24, 2020).

**Third**, and finally, this Court should be particularly wary of granting injunctive relief given the short time frame in which votes and election officials would have to react to any change in the election procedures. The hearing on this motion is scheduled to take place less than 90 days before the election, with key deadlines and early voting starting even sooner. The Supreme Court has often and recently—indeed, in this very proceeding—"emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican National Comm. v. Democratic National Comm.*, 140 S.Ct. 1205, 1207 (2020). This is because "[c]ourt orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). "As an election draws closer, that risk will increase." This Court has acknowledged that *Purcell* "cautions against court intervention in imminent elections." Doc. No 217 at 9.

Under the current schedule, any injunction in this case would issue less than three months before the election. The inevitable appeals by whichever side loses will undoubtedly "consume further valuable time." *Purcell*, 549 U.S. at 5; *see also Thompson*, 959 F.3d at 813 ("rewriting a state's election procedures or moving deadlines rarely ends with one court order" because "[m]oving one piece on the game board invariably leads to additional moves."). Even now, the WEC and local municipalities have their hands full preparing to conduct a safe in-person election, to deal with an expected large number of absentee ballot requests and votes, to provide for early in-person voting, and to address other challenges arising from the high turnout associated with a presidential election year. And deadlines for the November election begin in mid-October. Under *Purcell*, the Court must consider all of these factors when determining whether issuing an injunction that would alter the state's election laws in the weeks immediately preceding the election would add to voter confusion and negatively impact the upcoming election.

Courts have invoked *Purcell* in proceedings conducted on a similar time frame as this one. *See, e.g., Husted v. Ohio State Conference of NAACP*, 573 U.S. 988 (2014) (staying a lower-court order that changed election laws 61 days before election day); *Thompson*, 959 F.3d at 813 (election day was "months away but important, interim deadlines … [we]re imminent" and "moving or changing a deadline or procedure now will have inevitable, other consequences"); *Perry v. Perez*, 565 U.S. 1090 (2011) (22 days before the candidate-registration deadline); *Purcell*, 549 U.S. at 4-5 (33 days before election day); *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (32 days before election day).

The RNC and RPW recognize the Court's efforts to ensure this motion could be heard in as timely a manner as possible. *See* Doc. 217 at 9. But that cannot change the fact that three of these Plaintiffs waited until July to file their motions for preliminary injunctions, and the others chose to file in late June. And although the facts concerning COVID-19's effects within the state undeniably

5

change by the day and are difficult to forecast in advance, this simply underscores the other points made above: those changes are being caused by the virus, not the State, and any attempt to assess the effect of COVID-19 in the coming weeks is necessarily speculative. Against that changing backdrop, this Court should be particularly wary about adding further uncertainty to the mix of information voters must grapple with as this election approaches.

## CONCLUSION

For the reasons set forth above and in the Legislature's opposition, Plaintiffs' motions should be denied.

Dated: July 20, 2020

Jeffrey M. Harris
Cameron T. Norris
Alexa R. Baltes
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209

Respectfully submitted,

/s/ *Patrick Strawbridge*
Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com